UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION

```
.........................
Zbignew Lesniak              .
                             .        Civil No.
    v.                       .        11-12100-MAP
                             .
Konica Minolta Business      .
Solutions                    .
.........................
```

Before the Honorable Michael A. Ponsor,
United States District Court Judge,
Motion Hearing Held on **May 23, 2012.**

<u>APPEARANCES</u>:

For the plaintiff:  Richard Burch, 8 Greenway Plaza, Suite 1500, Houston, TX 77046.

For the defendant: Barry Miller, Two Seaport Lane, Suite 300, Boston, MA 02210.

Alice Moran, CSR, RPR, RMR
Official Federal Court Reporter
300 State Street, Room 303D
Springfield, MA 01105
Tel: (413)731-0086  Fax: (413)737-7333
alice.moran@verizon.net

```
1                              INDEX

2

3

4    Witness Name:        Direct   Cross   Redirect   Re-cross

5

6    None

7

8

9

10

11   Plaintiff's Exhibits:                            Page

12

13   None

14

15

16

17   Defendant's Exhibits:                            Page

18

19   None

20

21

22

23

24

25
```

1    **(Court commenced at 2:04.)**

2              THE CLERK:  Your Honor, this is the matter of

3    Lesniak versus Konica Minolta Business Solutions, Civil

4    Action 11-12100.

5              THE COURT:  All right.  This is a class action

6    complaint brought under the Massachusetts wage and hour

7    law alleging that certain employees of the defendant did

8    not receive compensation that they were entitled to under

9    the statute.

10        The case was originally filed in state court in

11   Hampden County and was removed here by the defendants last

12   November under the Class Action Fairness Act.  The

13   plaintiff has moved to remand the case to state court

14   claiming that the defendant cannot meet its burden to show

15   that the case involves one hundred or more members of the

16   proposed class and an amount in controversy in excess of

17   $5 million.

18        The parties have submitted memoranda in support of

19   and in opposition to the motion, and the plaintiff says

20   that there are only 83 potential class members even though

21   the complaint at paragraph 23 refers to, I believe, refers

22   to hundreds of class members.

23        Paragraph 23 of the complaint says "Although

24   plaintiff does not know the precise number of members of

25   the proposed class, there are hundreds and the members of

1    each class are numerous and geographically dispersed."

2        The defendant has submitted its own mathematics

3    suggesting that counting workers that are employed in

4    Massachusetts even though they may be living in a

5    neighboring state, there are at least 118 employees who

6    are potential class members and that the mathematics of

7    the hours put the aggregate, even without doubling or

8    trebling, at over $6 million in potential damages.  So

9    that's the horse race that I guess we have here this

10   afternoon.

11       May I ask each of you to introduce yourselves?  I

12   frankly don't know who's got which party here.  I'll start

13   over here.

14           MR. BURCH:  Good afternoon, Judge.  I'm Rex

15   Burch and I represent the plaintiff Mr. Lesniak.

16           THE COURT:  How do you spell your last name?

17           MR. BURCH:  B-u-r-c-h.

18           THE COURT:  That's easy.  All right.  Thank you

19   very much.

20           MR. BURCH:  Thank you.

21           MR. MILLER:  Good afternoon, Your Honor.  Barry

22   Miller for the defendant Konica Minolta.

23           THE COURT:  Okay.  So, Mr. Burch, it's your

24   motion and tell me why based on the record that I have

25   before me now the defendant cannot carry its burden.

```
 1              MR. BURCH:  Absolutely, Judge.  I'd like to

 2     start by noting that in the complaint at paragraph 9

 3     plaintiff alleges that Konica employed less than 100

 4     workers in Massachusetts in the relevant time period.

 5     That's the last sentence of paragraph 9 where it says

 6     "within the applicable limitations periods, Konica has

 7     employed nearly" --

 8              THE COURT:  Nearly.  Okay.

 9              MR. BURCH:  -- "nearly 100 technical support

10     workers in Massachusetts."

11         The defendants have submitted in opposition to our --

12     in their notice of removal, they did not cite any evidence

13     supporting the fact that there were more than 100 or

14     frankly that there was more than $5 million at issue.  In

15     their response, they --

16              THE COURT:  Five hundred -- $5 million.

17              MR. BURCH:  I'm sorry, did I say 500,000?

18              THE COURT:  I think you said $500.

19              MR. BURCH:  Even worse.  There is more than 500.

20         When we filed our motion to remand, they did file a

21     response and there are some class members who we agree are

22     properly part of the class.  There are 66 folks who were

23     Massachusetts residents who were assigned to a

24     Massachusetts Konica branch and who performed service

25     calls in Massachusetts.
```

1          It seems to us those folks are clearly class members.

2     Where Konica goes awry is that they have added 28 people

3     presumably to get them over the one hundred limit who did

4     not reside in Massachusetts, who were not assigned to a

5     Massachusetts branch but who occasionally did jobs in

6     Massachusetts.

7          The question of whether or not somebody is employed

8     in a particular state under wage and hour laws, that comes

9     up a lot.  It's come up in Washington state; it's come up

10    in New Jersey; it's come up in North Carolina.  That issue

11    comes up all the time, and uniformly those courts look to

12    where the relationship is grounded.

13         Where does -- where do the substantial parts of the

14    employment relationship lie?  Under that analysis, which

15    is also the restatement analysis just for general choice

16    of law issues, there's no way that they can make it.

17         Let me just give you some examples.  Just pulling

18    from their spreadsheets, if we look at their spreadsheet

19    there are 21 people who, even if we spread out the calls

20    and are most favorable to them, average less than two

21    calls per week in Massachusetts.  And based on the

22    evidence they submitted, we're looking at, you know,

23    somewhere between 15 and 25 average calls per week worked

24    by these workers, and so two calls per week would be a

25    tiny fraction of that, and again that's assuming that we

1    spread those calls out in a way that's most advantageous

2    to them averaging them across all their work weeks.

3              THE COURT:  Are you saying that if this case

4    goes forward, or when this case goes forward, you won't be

5    seeking damages for any of those 21 people?  I mean will

6    you be looking for -- assuming you prevail, will you be

7    looking for money from the defendant to reimburse those 21

8    or so workers for wages that they were entitled to under

9    the Massachusetts statute but did not receive?

10             MR. BURCH:  Well, that's the rub, Judge, is

11   whether or not they're entitled to it under the

12   Massachusetts statute.  The Massachusetts state uses

13   well-worn language.  It uses employed in --

14             THE COURT:  I see.

15             MR. BURCH:  -- which is different from say

16   California's wage and hour statute which used work

17   performed in.

18             THE COURT:  I see.

19             MR. BURCH:  And under statutes that say employed

20   in, you look to where the majority of the important

21   contacts are, where the employment relationship is

22   grounded.  For example --

23             THE COURT:  Let me just insert another question.

24   I'm sorry.  I know you will get on to your example and I

25   may forget my question.

1          If you were to stand in front of me and say we waive,

2     we abandon, we state explicitly on the record we are never

3     going to seek compensation for any of these 28 or 21

4     workers who worked outside of Massachusetts and who only

5     occasionally come into Massachusetts, I don't know whether

6     that would persuade me but it would impress me.  So I

7     guess the question is, is that what you're saying?  These

8     people are just not people we're looking for damages for?

9               MR. BURCH:  They are not.  They are not people

10    that were included in our class.  I mean, we know what

11    employed in means.  Right?  We have -- to get back to my

12    example, we have looked at courts and cases such as

13    *Bostain v. Food Express*, *Kramer v. Nowak*, we've looked at

14    those cases and what does that mean, and what that means

15    is somebody who has some significant relationship with the

16    forum state.

17         If you're a resident of Massachusetts, for example,

18    that makes perfect sense that Massachusetts intends to

19    protect its citizens.  You're entitled to protection.

20    That's not the group of folks we are talking about here.

21         The group of folks we are talking about here are

22    people who only occasionally, and a very small percentage

23    of their work, ever worked in the State of Massachusetts.

24         I mean, by Konica's definition of who's included in

25    this class, somebody can do one call in five weeks, one

1   call, okay, so one-twentieth of the calls they do in a

2   week in a five-week period and they're entitled to bring

3   an overtime claim for all of the work performed in that

4   week under Massachusetts law.  That to me -- while perhaps

5   I would like it in the abstract, I mean, Massachusetts has

6   very good wage and hour laws and all that, that just

7   doesn't seem like a workable rule to me.

8           THE COURT:  Okay.  Let me just take an

9   opportunity to educate myself about how this all works.

10      So I was assuming, well, two things.  I wasn't

11  assuming anything in terms of the sentence that I'm about

12  to produce, but I did think that if I were a worker and I

13  lived in Connecticut and I worked most of my time in

14  Connecticut and occasionally came up to Massachusetts, I

15  might very well, using common parlance or just common

16  sense ordinary English, say, well, you know, I'm up in

17  Agawam right now.  I'm employed in Agawam.  I'm working.

18  I'm employed here.  I'm going out about my work.  So in

19  some broad colloquial sense a person might say that he was

20  employed in Massachusetts.

21      So if there was a class action, I guess I was

22  assuming, and now I'm getting to the assuming part, that

23  you would claim that the Massachusetts statute would

24  govern the obligations that the defendant has to provide

25  wages for the employees while they are in Massachusetts

1    and to the extent that activities that they conduct in

2    Massachusetts are not properly compensated, they would be

3    looking for money for that.

4         If I'm John Smith and I spent five percent or ten

5    percent of my time in the Commonwealth of Massachusetts

6    servicing customers here, I might only get five or ten

7    percent of an individual's recovery, but I would be happy

8    to get that modest but tasty check from the litigation.

9         You're saying that's not how it works.  At least I'm

10   inferring from what you're saying that's not how it works.

11   You're going to be looking at all the hours that somebody

12   works and in that case you would have the Massachusetts

13   tail wagging the Connecticut dog in terms of calculation

14   of the plaintiff's entitlement, assuming you show

15   liability.  Is that how that works?

16             MR. BURCH:  It would seem to me that somebody

17   who works, to use Konica's example, 96 percent of their

18   time in Connecticut and 4 percent of their time

19   sporadically in Massachusetts does not have a claim under

20   Massachusetts wage and hour law.

21        To follow up on Your Honor's point, I mean, I think

22   it's important to look at what most of the off-the-clock

23   work being alleged here is.  Most of it is at home or

24   traveling.  Since these people are nonresidents, it is by

25   definition occurring outside the State of Massachusetts

1    because, as alleged in our complaint, it's the work we're

2    complaining about largely is performed at home.

3        And so a guy in Connecticut -- a guy in the general

4    sense -- a guy in Connecticut who works an hour off the

5    clock in Connecticut and then drives up to Massachusetts,

6    does one job, comes back, does another four jobs in

7    Connecticut, the complaint is about work that was being

8    performed at home, at least in my hypothetical right

9    there, and so how would that gentleman in good conscience

10   be able to come in and say I should be able to sue you

11   under Massachusetts wage and hour?

12              THE COURT:  Let me ask another question.  If you

13   subtract these 21 people, does the arithmetic come out to

14   where you're under a hundred?

15              MR. BURCH:  Yes, absolutely.

16              THE COURT:  Okay.  And let me hear from counsel

17   for -- Mr. Miller counsel for defendant here.

18              MR. MILLER:  Thank you, Your Honor.  We do take

19   a very different view of both the applicable law and of

20   the contentions that frame the jurisdictional issue here.

21       It is not the case that a single worker is fish or

22   foul for purpose of wage and hour laws.  It is not the

23   case that their entire employment relationship is governed

24   by the laws of a single state, much less are they limited

25   to the state in which they reside in terms of the wage and

1    hours that govern their employment.  This is something

2    that is well established.

3         Mr. Burch made reference to the statutory language,

4    which is the beginning of the inquiry but it's not the end

5    of the inquiry.  There are at least two recent court

6    decisions that have answered the very question that Your

7    Honor posed.  The question being:  Does Massachusetts law

8    apply to individuals who traveled to Massachusetts on an

9    itinerate basis to perform work within the Commonwealth?

10        The first case came from Judge Lauriat in the

11   business litigation session of Massachusetts superior

12   court.  He, of course, is well positioned to interpret the

13   Massachusetts wage and hour laws.

14            THE COURT:  A very well-respected superior court

15   judge.

16            MR. MILLER:  Indeed.  In a case captioned *Dow v.*

17   *Casale*, which is cited in our papers, Judge Lauriat looked

18   at the situation of a resident of the State of Florida who

19   worked for a company that was based in Connecticut and

20   traveled to Massachusetts 20 times over a period of two

21   years, so about ten times per year, and under those

22   circumstances Judge Lauriat said, yes, the Massachusetts

23   wage and hour laws do apply to the activities that this

24   plaintiff, Mr. Dow, performed in Massachusetts.

25        He went through a rigorous statutory analysis and he

1    looked at the statutory language that Mr. Burch provided,

2    and he said that language is open ended.  It does not in

3    any way constrain the application of the statute to

4    individuals who reside here, nor does it exclude

5    individuals who work for an employer that is based

6    somewhere else.  It does not exclude individuals who

7    reside somewhere else.

8        So based on the case most directly interpreting that

9    question, the application of the Massachusetts wage and

10   hour laws would reach all 28 of the individuals that we

11   contend are relevant for jurisdictional purposes.

12       I should correct the record.  I think Mr. Burch

13   misspoke when he said that there were 66 individuals on

14   our list with Massachusetts addresses.  In fact, there are

15   86 or rather 84, I'm sorry.  There are six who are

16   assigned to Massachusetts branches which means that the

17   number of people needed to bring us to a hundred, the

18   jurisdictional threshold, is ten.

19       The top ten people on our list who resided elsewhere

20   but traveled to Massachusetts in order to perform work

21   here did so very frequently.  The specific frequency is

22   digested in the evidence that we submitted in support of

23   our papers, but on average it breaks down to this:  One to

24   15 service calls in Massachusetts per person per week.

25   That is well above the threshold of 20 trips to

1    Massachusetts in two weeks.  In fact, we set the threshold

2    that we set to capture those 28 people based on Judge

3    Lauriat's reasoning in the _Dow_ case because those 28

4    people all made more than ten trips into Massachusetts per

5    year.

6         Now we're not going to take the position as to where

7    exactly the threshold is, but Judge Lauriat already did

8    that in one case and he said the threshold is certainly

9    not lower than ten trips per year.

10             THE COURT:  Let me go back and say what you said

11   to me and make sure I understand the arithmetic.

12        I think you said that there were some 84 people as to

13   whom there's no contest; that is, these are people who

14   live in Massachusetts who are assigned to outlets existing

15   in Massachusetts, no question about it, and there's six

16   other people who live outside Massachusetts but are

17   assigned to, I don't know whether they would be called

18   centers or offices or shops or whatever in Massachusetts.

19        So they're commuting from outside of Massachusetts

20   but actually their place of employment under any

21   construction of that term is in Massachusetts, and then

22   you say out of the remaining 21 or so that are contested,

23   if you take the ten who appear here the most, you're

24   talking about a group of people who are coming into

25   Massachusetts one to 15 times per week.

1          MR. MILLER:   That's correct.   I should correct

2    that slightly.   I'm not sure that it makes a difference

3    but just because Your Honor is trying to correct the

4    record, I should be specific.   84 people on the list are

5    resident here.   That number doesn't take into account the

6    branch to which they're assigned.   Six people were not

7    resident in Massachusetts but were assigned to a

8    Massachusetts branch, and then 28 people follow the

9    threshold that Judge Lauriat said, and I think it is worth

10   commenting on the fact that these people don't actually

11   spend the majority of their employment at an assigned

12   branch.

13       One thing that's not yet necessarily fully flushed in

14   the record but I think Mr. Burch and I can agree that

15   these people are field service personnel.   So they spend

16   their entire day, for the most part, on the road, and the

17   analogy that Mr. Burch gave or the example that he gave of

18   someone who works at home and then travels into

19   Massachusetts I think illustrates why Massachusetts wage

20   and hour law would potentially apply to that relationship

21   because part of what they're trying to recover here is the

22   travel that individuals undertake after they leave their

23   home that they incur getting to their first job site.

24       So if they live in Hartford and they do some work at

25   home, that is enough to make them on the clock and enough

1     to begin their workday.  They drive up to Springfield and

2     they do three calls in Springfield, the travel time is

3     going to be counted and potential the travel time back

4     would be counted as well.

5                 THE COURT:  Now, let me put a question to you

6     that I tried to put to Mr. Burch.  I think I managed to

7     make it fairly clear and I think he understood it, and the

8     question is this:  Do you view your client as vulnerable

9     to claims for all the hours that these individuals may

10    have worked for your client?

11        I'm speaking now of the 28 or the ten who live

12    outside Massachusetts and come into Massachusetts

13    intermittently, or are you viewing your client as exposed

14    to wage claims only for the hours, for example, the travel

15    hours which the plaintiff alleges they weren't compensated

16    for after they crossed the Massachusetts line and get to

17    Longmeadow or Agawam or wherever in Massachusetts to do

18    their field work?

19                MR. MILLER:  Well, Your Honor, first in response

20    to that I would say defendant's position is it doesn't

21    matter for the jurisdictional inquiry because what is

22    relevant for jurisdictional inquiry is the amount in

23    controversy. It's what they could seek based on the face

24    of their complaint and defendant's response to their

25    allegations is just immaterial for purposes of

1    jurisdiction.

2         Of course, the defendant contends that it has a

3    little or no liability here, but that's not relevant for

4    the jurisdictional inquiry.

5         I think, as an academic matter, among this group of

6    28 people that make up the margin over one hundred class

7    members, there's going to be different analyses that need

8    to be performed.

9         For example, if someone lives just over the

10   Connecticut border and performs 15 service calls in

11   Massachusetts per week, that person could argue that their

12   entire employment relationship was governed by

13   Massachusetts law applying an argument similar to the one

14   that Mr. Burch offered.

15        We don't know if they're going to do that or not but

16   they certainly could.  We reserve the right to defend on

17   the grounds that, to the extent that we have any liability

18   here, it would be limited to hours worked in

19   Massachusetts, but I don't think that changes the

20   jurisdictional analysis.

21             THE COURT:  One other question in terms of the

22   $5 million threshold.  Does the case law -- and I could

23   have researched this but I didn't look at it, does the

24   case law require or permit the court to take into

25   consideration a potential trebling of the damages?

1          MR. MILLER:  It does, Your Honor.  In fact, it's

2     required.  It's not permissive.  I can provide a citation

3     for that.

4          MR. BURCH:  It does, Your Honor.

5          THE COURT:  Okay.  So if the number is two

6     million and there is a risk of trebling, you're up to six

7     million and you're over the threshold.

8          MR. MILLER:  Exactly.

9          THE COURT:  In your case you say the number is

10    six million and change and the trebling brings it up to

11    the neighborhood of 20 million.

12          MR. MILLER:  That was our position at the time

13    that we opposed the motion to remand.  I should observe

14    Mr. Burch notes that we didn't include any evidence in our

15    removal petition.  It's clear that that's not required.

16    To the extent that the Court is interested, I can provide

17    a citation for that too.

18       The Court should take into consideration evidence

19    bearing, no matter when submitted, on the amount in

20    controversy at the time the case was removed.  And at the

21    time the case was removed, our best understanding of

22    plaintiff's position was that these people worked on

23    average fourteen and a half hours off the clock per week

24    and that's the genesis of the number that is provided in

25    our opposition to the motion to remand.  I don't know if

1    it has yet come across Your Honor's desk.

2          THE COURT:  Your supplement, yes, you say that

3    in Chicago there's a piece of litigation in which the

4    numbers are comparable to the numbers that you have

5    suggested here.

6          MR. MILLER:  They certainly are well over the

7    amount that they would need to be to meet the amount in

8    controversy requirement.

9       The model that we supplied with our opposition to the

10   motion to remand is a very rigorous analysis of the actual

11   weeks worked by the 118 people that we believe are clearly

12   relevant for purposes of the jurisdictional analysis here.

13   There's no guesswork or rounding in it.  It's the actual

14   weeks they worked multiplied by their hourly rate, and the

15   only variable to plug into that analysis is the hours that

16   plaintiffs are going to contend they worked off the clock.

17   We have no records of that.  There's no way that we can

18   supply it, but based on fourteen and a half hours, you get

19   to the $6 million plus single damages number.

20      For it to come below $5 million, plaintiffs would

21   have to take the position that they worked less than 3.75

22   hours per week on average.  At 3.75 hours per week on

23   average, if you do the math and multiply it through, you

24   get an amount that single damages in excess of 1.67

25   million and treble damages in excess of $5 million.

1          What we can tell from those affidavits and from the

2     expert report that Mr. Burch and his co-counsel have

3     submitted in the companion case is there's no reasonable

4     probability, which is the standard here, both sides agree,

5     that the court looks at whether there's a reasonable

6     probability that the jurisdictional threshold is met.

7               THE COURT:  Let me just insert another question

8     because it's always nice if you can grab any opportunity I

9     have to educate myself.

10         Aside from the fact that you have this beautiful

11    courthouse, this wonderful federal courthouse, does the

12    defendant have any other advantage in removing this case

13    to federal court?

14         I don't mean tactical advantages or litigation

15    advantage?  The question I really mean is does the class

16    Action Fairness Act, which allows you to remove the case

17    here to federal court, include any provisions which make

18    as a statutory matter the plaintiff's job tougher to win

19    his case, or is the difference instead of being down the

20    street in the Hampden County Superior Court you're up the

21    street here in federal court?

22              MR. MILLER:  Certainly we appreciate Your

23    Honor's hospitality in the courthouse.

24              THE COURT:  That's fine.  I'm sure you both do

25    and all that, but does the statute say that the burden on

1    the plaintiff is higher or the standard that the plaintiff

2    has to reach is higher, or the amount of damages that the

3    plaintiff can potentially obtain is less or something like

4    that?

5              MR. MILLER:   The Class Action Fairness Act

6    doesn't address any of those issues, Your Honor.  It does

7    have provisions in addition to the jurisdictional

8    provisions that govern, for example, certain things that

9    would have to happen in the context of settlement

10       Pursuant to 28 U.S.C. 1715 if we settled the case, we

11   would have to provide notice to the State Attorney

12   General, and there are consumer protections built in.  It

13   is in my view, and Mr. Burch obviously can state his own,

14   that the Class Action Fairness Act itself doesn't really

15   change the burden that plaintiffs carry.

16       In defendant's view, other aspects of the federal

17   procedural rules are better constructed in federal court

18   and more favorable to defendants in federal court in that

19   it is less likely under the federal rules that a class

20   action that poses serious due process issues in the way

21   the Supreme Court recently analyzed the *Dukes v. Wal-Mart*

22   case would be certified.

23       The state court has yet to reach that issue so in

24   addition to the different resources available at the

25   federal level versus the state level, defendants, and this

1    is not just Konica, all defendants will generally prefer

2    to be in federal court.

3              THE COURT:  Okay.  Let me give you a couple

4    minutes to respond, Mr. Burch.  You've got a difference

5    with regard to the law it would appear, and even without

6    the difference with regard to the law, what about the top

7    ten?  This is a little bit like the Hit Parade here.  He's

8    picked his top ten employees and he says they're in here

9    in plenty of time and there's this *Dow* case of Judge

10   Lauriat's.  I never met Judge Lauriat but I know what his

11   reputation is.

12             MR. BURCH:  Well, I'll tell you, Judge, Judge

13   Lauriat, I like that case, *Dow* versus -- we call it

14   *Casale*.  I don't even know if that's right, but it's *Dow*

15   *v. Casale*.  We call it the *Casale* case.

16       I like that case because he basically adopts the view

17   that I'm telling you, because in that case the location

18   that the work was performed was not considered primary

19   because the location of the work was outside of

20   Massachusetts.

21       What was considered primary by him was the fact that

22   we are dealing with a Massachusetts employer in that case,

23   and in this case we are unequivocally not dealing with a

24   Massachusetts employer.  As Konica admits in their notice

25   of removal, they are an employer from either New York or

1    New Jersey or maybe both if Mr. Miller's amalgamation of

2    laws has some persuasive value to you.

3        In that case Judge Lauriat said, look, we've got a

4    Massachusetts business; we got an employee who had a

5    Massachusetts business address whose customers sent all

6    their paperwork through Massachusetts; his phone rang in

7    Massachusetts; his fax rang in Massachusetts; his mail

8    went to Massachusetts; he was a salesman so he's by

9    definition out of the office a lot.  So where is this

10   centrality of his employment?  The centrality of his

11   employment is at the Massachusetts office which, by the

12   way, was the defendant's only office.  They only had an

13   office in Massachusetts.

14       If you look at the language of the statute, it talks

15   about employers in the Commonwealth.  So obviously the

16   legislature had in mind to pay particular attention to

17   employers who were headquartered or home base was in

18   Massachusetts.

19       So it seems to me that by focusing on *Dow v. Casale*

20   they're basically admitting that you don't primarily weigh

21   where the work was performed, especially when you're

22   talking about a tiny fraction of the work being performed

23   in Massachusetts.

24       I do want to follow up on a very important point that

25   Mr. Miller and I agree on, and that is we're construing

1    our complaint and the question for the judge to answer is

2    what does our complaint say?

3        We have said -- we have used language that has been

4    used in numerous cases, employed in, and employed in under

5    the restatement under most of the cases that -- well,

6    every case that I have seen that construes that phrase,

7    you look to where the employment is grounded.

8        I agree that with respect to folks that are assigned

9    to a branch in Konica, reside in Konica and do service

10   calls in Konica, all those people are clearly in and

11   that's the 66.  By the way, all three live in --

12              THE COURT:  Did you say 66?

13              MR. BURCH:  There are 66 who reside in

14   Massachusetts, are assigned to a Massachusetts branch, and

15   do service calls in Massachusetts, all three.  That's

16   where the 66 comes from.  I think there was a disagreement

17   as to whether or not that was people who just reside in.

18   There are more people who reside in Massachusetts, and we

19   are not quibbling about anybody who resides in

20   Massachusetts.

21       The question here is whether these 28 people who

22   reside outside of Massachusetts --

23              THE COURT:  I'm beginning to feel like Senator

24   McCarthy and the number of communists in the State

25   Department.  There's a lot of numbers that are flying

1    around here and I'm getting confused.  Sixty-six is a new

2    number to me.  I thought we were talking about 84

3    before.

4              MR. BURCH:  That's fine as well.  There are 84

5    Massachusetts residents, and regardless of anything else,

6    if you're a Massachusetts resident, to me you're covered.

7              THE COURT:  Okay.

8              MR. BURCH:  So there's no quibbling with respect

9    to those 84.  I think where our disagreement is is with

10   respect to the 28 people who do not reside in

11   Massachusetts and who are not assigned to a Massachusetts

12   branch.

13             THE COURT:  Now I think that again -- this is

14   just perhaps I'm giving too much attention to the trees

15   rather than the forest or maybe even the twigs, but I

16   thought that Mr. Miller said that there were at least six

17   who resided outside of Massachusetts but that were

18   assigned to a Massachusetts branch, and that sounds like

19   what Judge Lauriat was talking about.  They have an

20   office; their phone rings there.

21             MR. BURCH:  Right.

22             THE COURT:  So we're up to 90 who are either

23   Massachusetts residents or out-of-state residents working

24   for a Massachusetts branch.  So all I have to do -- all

25   you have to do is fight off nine or eleven of those

1    remaining ones and so you're down to 99, and all he has to

2    do is to get up to ten and we're there.   That seems to be

3    what the math is.

4         Well, I guess I'll have to take a close look at Judge

5    Lauriat's decision, but I'm not sure that I need anything

6    else from you.

7         Did you want to comment on my sort of global question

8    about whether, and again don't take this personally,

9    whether there's anything that puts you at a disadvantage

10   substantively here in federal court based upon the CAFA or

11   whether you just made the decision you'd rather be in

12   Hampden Court?   That Hampden Superior Court, they have

13   fabulous judges down there and that's where you filed it

14   and that's where you want to be.   Substantively it's the

15   same law presumably and that CAFA doesn't put you in any

16   greater disadvantage, or does it?

17            MR. BURCH:   Well, I think Mr. Miller was

18   accurate.   I mean, there are aspects of CAFA that impact

19   how you can settle, notices that have to be given to

20   States Attorney Generals and things like that.

21        I think what's important to remember about CAFA is

22   that what it was really designed to get at is sort of

23   these sprawling state court class actions that go over

24   many states which is not what we have here.

25            THE COURT:   Right.   You're always reading these

1    lurid stories of some tiny little court in a corner of

2    some obscure state that is suddenly awarding a hundred

3    billion dollars against some corporation that sued there

4    and a generous appeals court was affirming and this was a

5    problem that people were concerned about.  We don't have

6    that problem here.

7            MR. BURCH:  We don't have that here, and I think

8    that the -- I would agree that the standards for class

9    certification are different in Massachusetts state court

10   than they are in federal court.

11       I don't know how much difference that makes.  It's

12   clearly important to Konica but that's why this case got

13   removed in Rex's estimation.

14           THE COURT:  Well, I don't think I need any more

15   in terms of oral argument.  I was hoping to come out here

16   and rule from the bench, but I do want to take a look at

17   the *Dow v. Casale* case, if that's what it is, and I should

18   be able to get you a prompt ruling.

19           MR. MILLER:  Your Honor, I actually mentioned

20   that there were two authorities that bear on the issue and

21   I think we got sidetracked a little bit.  *Dow v. Casale* is

22   one and at the time we opposed --

23           THE COURT:  You can have a seat, Mr. Burch.

24   I'll give you a chance.

25           MR. BURCH:  Absolutely.

1          MR. MILLER:  At the time we opposed plaintiffs'

2     motion to remand, we didn't know what their position was

3     as to who was in and who was out.  We didn't have the

4     benefit of Mr. Burch's analysis that he's provided here

5     today, but the second case that bears on this is a case

6     that Judge Gorton decided in 2010.  It's called *Gonyou*,

7     G-o-n-y-o-u, *Gonyou v Trywire Engineering Solutions*.  It's

8     717, F.Supp 2nd, 152, and Judge Gorton undertook a similar

9     analysis to the analysis that Judge Lauriat undertook.

10         I won't belabor the point, but it is our view that

11    Judge Gorton's analysis in that case where he found that

12    an entity that was not based in Massachusetts, it was

13    based in Connecticut, could be sued under the

14    Massachusetts wage and hour laws.

15         MR. BURCH:  It actually is a Massachusetts case.

16         MR. MILLER:  Okay.  I may have misspoken but the

17    gist of the *Gonyou* case is that the Massachusetts statutes

18    can be given broad application in a way that is

19    inconsistent with the analysis that Mr. Burch has offered.

20         Instead of a centrality type analysis of the type Mr.

21    Burch has offered, they talk about sufficient contacts.

22    It's almost like an *International Shoe* minimum contacts

23    jurisdictional analysis.  And just as in the

24    jurisdictional analysis under *International Shoe*, an

25    entity can be subject to jurisdiction of more than one

1     court.  That's our view on the additional authorities.

2              THE COURT:  Okay.  You didn't get a chance to

3     talk about *Gonyou* and if you'd like to get your two cents

4     in on that case, I would be happy to hear it.

5              MR. BURCH:  Thank you.  I would just like to

6     mention that in *Gonyou* we were dealing with a

7     Massachusetts resident working for a Massachusetts

8     company.

9         Again, they sort of did an analysis of what has the

10    primary relationship to the employment relationship

11    because wage and hour -- and I think this is a common

12    theme that you will see through all these cases.  Wage and

13    hour laws sort of deal with the employment relationship.

14    Right?

15        The laws like workplace safety laws, they deal with a

16    place.  They deal with something tangible, but an

17    employment relationship is an intangible, and in those

18    instances you will see cases like, for example, the cases

19    that, with Your Honor's permission, I'm going to send you

20    three case citations, but in the *Ponos* case from North

21    Carolina you had --

22             THE COURT:  Is this in your memo, this case that

23    you are giving me right now?

24             MR. BURCH:  It is not.  My understanding of how

25    Your Honor likes to do things, and maybe I've been

1    misinformed, was we file a motion, they file their

2    response, and absent extraordinary circumstances, no

3    replies.

4                THE COURT:  Sure.  I'll certainly give you a

5    chance to send me these case citations, but if that's

6    going to be the case, then I want to give Mr. Miller a

7    chance to respond to your additional cases.

8                MR. BURCH:  The thing is I don't want to create

9    additional work for you.  I'm certainly sympathetic --

10               THE COURT:  No worry.

11               MR. BURCH:  -- to you, but I did want to -- I do

12   want to at least give you the citation which is 677,

13   Southeast 2nd 868.  In that case the plaintiffs sought to

14   sue under North Carolina's wage and hour law and he was in

15   the state 18 days.  He did conference calls regular in

16   that state and the North Carolina court said, no, you

17   don't get to sue under our law just because you sort of

18   incidentally come into contact with our state.

19       I think if you look at the *Bostain v. Food Express*,

20   which is 153, Pacific 3rd, 846 Washington, 2007, as well

21   as *Kramer v. Nowak*, which is 908, F.Supp 1281 out of the

22   eastern district of Pennsylvania that deals with New

23   Jersey law, I think you will find that that's a common

24   theme.

25               THE COURT:  Well, all right.  I'll take a look

1    at this material and get you a ruling.

2         If the motion to remand is allowed, it's one less

3    donut in my cupboard.  If the motion to remand is denied,

4    then I'm going to be sending you along to Judge Neiman for

5    a Rule 16 conference.

6         I'm tempted -- well, no, I think that's what I will

7    do.  If the motion to remand is denied, the case will be

8    referred to Magistrate Neiman and he will be issuing an

9    order for you to appear before him and put together a

10   schedule for the completion of pretrial proceedings which

11   will include a motion for class certification and various

12   other things that you are going to be working on.

13        As I say, if I allow the motion to remand, then it

14   will be up to the judges down the street to get the case

15   on track through whatever mechanisms they have.

16        Thank you very much.  It's been an interesting

17   argument and I will get you a prompt ruling.

18             MR. MILLER:  Thank you.

19             MR. BURCH:  Thank you, Your Honor.

20             THE COURT:  Court's in recess.

21   **(Court recessed at 2:45.)**

22

23

24

25

1                      C E R T I F I C A T E

2

3

4        I, Alice Moran, Official Federal Court Reporter for

5    the United States District Court for the District of

6    Massachusetts, do hereby certify that the foregoing is a

7    correct transcript from the record of proceedings in the

8    above-entitled matter.

9

10

11

12                         /s/ Alice Moran

13                    ━━━━━━━━━━━━━━━━━━━━━━━━

14                       Dated June 7, 2012

15                    Alice Moran, CSR, RPR, RMR

16                   Official Federal Court Reporter

17                    300 State Street, Room 303D

18                     Springfield, MA 01105

19                         413-731-0086

20                    alice.moran@verizon.net

21

22

23

24

25